RECEIVED
JUL 2 9 2019
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

NATASHA TRISLER, ET AL.     CASE NO. 17-CV-421

-vs-     JUDGE DRELL

LIFESHARE BLOOD CENTERS     MAG. JUDGE PEREZ-MONTES

MEMORANDUM RULING

Before the court are two motions filed by defendant, LifeShare Blood Centers ("LifeShare" or "Defendant") in the above-captioned case. The first motion seeks partial summary judgment as to certain claims by Plaintiffs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Doc. 145). The second motion seeks partial decertification of the purported class. (Doc. 146). Both motions are now fully briefed and properly before the court for decision. (Docs. 154, 155, 159, 164). After consideration of the motions, briefs in support and opposition, as well as all applicable law and jurisprudence, the court finds that defendant's motion for decertification should be GRANTED in part and DENIED in part for the reasons set forth below. The court also finds that defendant's motion for partial summary judgment should be GRANTED.

I.  **Relevant Facts**

The original Plaintiffs in this motion, Natasha Trisler ("Trisler") and Heather Savage ("Savage") filed this collective action in Louisiana's Ninth Judicial District Court on February 16, 2017, in their individual capacities and on behalf of others similarly situated. (Doc. 1-2). Trisler and Savage allege that, while employed as technicians at the Alexandria, Louisiana location of LifeShare, they were subjected to violations of both the FLSA and Louisiana law. Specifically, the representative Plaintiffs allege that LifeShare's policy of automatically deducting 30 minutes

1

for meal breaks from any day's time exceeding 6 hours was applied to them, even on days where they did not receive a bona fide meal break. Additionally, Plaintiffs allege that such deductions were made over their requests for compensation on days where they amended their time sheets to reflect "no lunch taken." (Id. at ¶¶ 9-15). Plaintiffs also allege that LifeShare maintained a policy of preventing employees from working overtime by scheduling them for time off and by moving worked hours from one week to the next on timesheets to spread them out into 40-hour weeks. Plaintiffs further allege that their travel time was wrongfully not counted on their timesheets. (Id.)

Plaintiffs' collective action was timely removed to this court and, by grant of joint motion, the class was conditionally certified in May of 2017. (Doc. 20). The court approved the parties' stipulated notice form in January of 2018. (Docs. 111, 113). Since the removal of the suit, approximately seventy-four (74) individuals opted into the purported class. The court extended discovery deadlines several times to allow for additional discovery prior to the filing of the instant motions. (Docs. 115, 141).

## II. Defendant's Motion to Decertify Class

The FLSA establishes federal minimum wage, maximum hour and overtime guarantees regarding qualified employers. (29 U.S.C. § 201, *et seq.*). Specifically, covered employers must pay their employees at the rate of the established federal minimum wage for all time worked amounting to forty (40) hours or less in any given week. When any employee works more than 40 hours in a given week, the employer must compensate all hours worked in excess of the 40-hour maximum at the rate of one and half times the federal minimum wage. 29 U.S.C. §§ 206, 207. These provisions may not be prospectively modified or waived by contract. Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728 (1981).

2

Plaintiffs are permitted to file FLSA claims individually and on behalf of other, similarly situated, employees in what are known as "collective actions." 29 U.S.C. § 216. The FLSA does not define "similarly situated," but courts within the Fifth Circuit routinely apply the two-step analysis employed by the District of New Jersey court in Lusardi v. Xerox Corporation to assess a putative class' fulfillment of the standard.[1] Lusardi advanced the view that FLSA collective actions may be divided into two stages: the notice stage and the decertification stage. At the notice stage, the court's imperative is to determine whether the putative class is similarly situated based on the allegations of the pleadings, together with any preliminary evidence, including affidavits. Since discovery is yet to be conducted at this stage, the court takes a relatively lenient view of the class certification standard. Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995) *overruled on other grounds by* Desert Palace v. Costa, 539 U.S. 90 (2003); Lusardi, 118 F.R.D. 351, 353-54 (D.N.J. 1987). The court will generally require a showing that "some factual nexus" that binds the named plaintiffs and prospective class members together as victims of an alleged policy or practice, creating judicial efficiency by the consolidation of these claims. Barron v. Henry County School System, 242 F.Supp.2d 1096 (M.D. Ala. 2003) *citing* Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D.Or. 2002). If the court grants conditional certification of the class, notice is sent to prospective class members, signaling the start of the opt-in period and what, in most cases, is the prime discovery period. After conditional certification, a case will proceed as a representative action during discovery. Mooney, 54 F.3d at 1214.

The second, decertification, stage is often triggered by a motion to decertify the class on behalf of one or more defendants to the action. Such motion is usually preceded by substantial discovery

---

[1] Another approach, referred to as the "Spurious Class Action," approach, derives from Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990). As noted by the Basco court, the Lusardi analysis is more widely accepted within the courts of the Fifth Circuit and, for that reason, we employ it here. Basco v. Wal-Mart Stores, Inc., 2004 WL 1497709 *4 (E.D. La. 2004).

3

and, thus, the court's vantage point from which to examine the issue of whether the purported class is, in fact, similarly situated, is generally improved from the notice stage. Id. Plaintiffs bear the burden of demonstrating that they are "similarly situated" in response to a motion to decertify. Proctor v. Allsups Convenience Stores, Inc., 250 F.R.D. 278, 28-81 (N.D. Tex. 2008). At this stage, the court will consider: (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to the defendant employer and the number of plaintiffs as to which these defenses may apply; and (3) fairness and procedural considerations that may make certification improper. Basco, 2004 WL 1497709 *8.

Once the court determines the class' similarly situated status, it will grant or deny the motion based upon its finding. If the court grants the motion to decertify, it will issue an order decertifying the class and dismissing without prejudice all claims by plaintiffs who have opted in. Thereafter, the original plaintiffs may proceed to trial to litigate their individual claims. Id.

The case at bar presents a procedural history aligning with the Lusardi format. Having conditionally certified the class, we now return to the issue of "similarly situated" in the context of a motion for decertification by Defendant. At this point in the case, a great volume of discovery is concluded and our access to information about the purported class enables the court to make a deeper assessment of the class' fulfillment of the standard.

LifeShare is a non-profit organization operating blood centers in Louisiana, east Texas and southern Arkansas. LifeShare solicits donations of blood and blood components from volunteer donors at both blood centers and mobile blood drives. Trisler and Savage, named Plaintiffs in this suit, were employed at LifeShare's Alexandria, Louisiana location as donor service technicians until resigning in 2016. Their complaint alleges that a substantial portion of their employment duties involved collecting blood donations at mobile blood drives and this suit's allegations center

4

around that part of their jobs. Specifically, as introduced above, Plaintiffs allege that LifeShare employees are involuntarily charged for a 30-minute meal break, even when they are unable to take such a break, in any day on which they report 6 or more total hours worked. (Doc. 1-2, 1-3). Plaintiffs allege that they were rarely permitted to take a bona fide meal break as that term is defined in the FLSA. Plaintiffs further alleges that supervisors were aware of the issue but made the pay deductions regardless of the lack of meal breaks. (Doc. 1-2 at ¶ 10).

Applying Lusardi and its progeny, we first assess the disparate factual and employment settings of the individual plaintiffs. The purported class is comprised of current and former LifeShare employees from its Alexandria, Lake Charles, Baton Rouge, Monroe, Shreveport, Beaumont, Texarkana and El Dorado centers. The evidence before the court shows that all plaintiffs hold or held jobs with the same or substantially similar responsibilities in that they assisted donors with the blood donation process at both the centers and mobile blood drives.

Plaintiffs point out that LifeShare's human resources department is located at its Shreveport corporate headquarters and is the origin of the meal deduction policy at issue in this case. Doc. 155 at pp. 5-6. Plaintiffs offer the deposition of Margaret Plunkett as evidence that LifeShare regularly sends human resource representatives to visit each center and provides each center with coordinated policy, practice and procedure training. (Doc. 155-1 at 10:4-17; 14:17-25). Additionally, plaintiffs offer the signed declarations of various employees at each center, attesting to identical misapplications of the meal deduction policy. (Doc. 155-8). Based on these allegations, plaintiffs allege that the meal deduction policy was similarly misapplied at each of LifeShare's locations. (Doc. 155 at p. 16).

In a significant admission, LifeShare denies similarity as to the application of the policy among its locations. (Doc. 159 at pp. 2-3). In support of this argument, LifeShare draws our attention to

5

the Alexandria pay record data submitted by plaintiffs. (Doc. 155-3, -4). LifeShare summarizes this evidence as showing "...**zero** instances where an Alexandria plaintiff wrote 'no lunch' on their handwritten time sheets and had the automatic lunch deduction reversed and **zero** instances where the electronic hours worked detail reports show that an Alexandria plaintiff worked at least 6.10 hours in a day but where the 30-minute automatic lunch deduction was reversed/cancelled/waived." (Doc. 159 at p. 2 (emphasis original)).

The court examined the pay record data before us and finds that, with the exception of the records of Alexandria employees David Marie ("Marie") and Shenequa Spencer ("Spencer"), the data does support LifeShare's argument that the Alexandria center appears not to apply LifeShare's stated policy of reversing the meal deduction at all, as these records seem to show no instances in which the deduction was reversed. Indeed, the court is unaware of any handwritten pay record upon which an employee, including Trisler and Savage, wrote "no lunch." (Docs. 155-3 at pp. 28-29; 155-4 at pp. 131-33; 170-1, -2). While the computerized pay records for Marie and Spencer do not show any date on which they worked 6.10 hours or more and were not subject to the automatic meal deduction, Marie and Spencer's handwritten time sheets are not included in the evidence presented and, for that reason, we are unable to draw any conclusion based solely on these employees' computerized records. As a whole, however, we agree that the evidence contradicts the blatantly cut-and-paste employee declarations submitted by plaintiffs, attesting to identical misapplication of the rule at each location.

Also contradicting these sworn statements is the pay record data from other locations showing that employees in the remaining centers were, in many instances, permitted to write "no lunch" on their handwritten time sheets and, based on that notation, have their automatic meal deduction reversed. (Docs. 146-9, *et seq.*). Given this evidence, we agree with LifeShare's assertion that,

6

despite the existence of a single policy emanating from its corporate headquarters, the application of that policy varied among sites, likely due to managerial styles and individual understanding of the policy in practice. Proctor, 250 F.R.D. at 280-81, *citing* Johnson v. TGF Precision Haircutters, Inc., 2005 WL 1994286 (S.D. Tex. 8/17/2005). Accordingly, we conclude that the evidence before the court as to the first Lusardi factor favors decertification, as it tends to show disparate factual circumstances at the various LifeShare centers at issue in this case.

Lusardi analysis continues with examination of the various defenses available to LifeShare and to which plaintiffs such defenses may apply. LifeShare claims that, because of the vastly different applications of the meal deduction policy, its defense of this case will be much different as to the Alexandria plaintiffs than it would as to the opt-in plaintiffs. (Doc. 146-1 at pp. 11-13). Specifically, as to the opt-in plaintiffs, LifeShare anticipates challenging a variety of fact issues related to whether or not the pay record data before the court is accurate and whether or not those employees actually took a bona fide meal break under the FLSA. (Id. at p. 11). Moreover, LifeShare will attempt to show its own managers' lack of knowledge of the meal deduction policy's mis-application. Lastly, LifeShare will argue prescription, good faith and other mitigating theories. (Id. at p. 12). LifeShare asserts that, because the Alexandria plaintiffs' pay record data does not show that they wrote "no lunch" and, instead, these plaintiffs allege that they were effectively prohibited from claiming "no lunch" by management, their defenses in these cases would be, in effect, narrower. Generally, LifeShare argues that the specific, factually-intricate, inquiries that must be conducted regarding each plaintiff will certainly produce a varying array of defenses that will not be evenly applicable across these cases.

Plaintiffs deny that the variety of defenses potentially available to LifeShare as to their claims are so diverse as to warrant decertification. Plaintiffs allege that testimony will "vary little, if at

7

all, from center to center and employee to employee regarding LifeShare's unlawful meal break policy." (Doc. 155 at p. 15). Returning to their overarching theme, Plaintiffs assert that LifeShare violated the FLSA in the "exact same manner at all of its several locations, causing…Plaintiffs to be damaged in the exact same manner." (Id.).

Although the existence of individualized defenses does not, alone, justify decertification, our goal is to ensure that the volume and nature of such defenses does not prevent efficiency in case management. Reyes v. Texas Ezpawn, L.P., 2007 WL 101808 *5 (S.D. Tex. 2008) citing Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Penn. 2000). In this case, as noted above, the evidence shows that the payroll policies were applied in differing ways across LifeShare's locations. We find LifeShare's intended defenses will necessarily involve fact-intensive inquiries into the work schedules, subjective beliefs and norms at each separate blood center. While we find that grouping these defenses according to location may be feasible and even wise, we do not find that efficiency can be preserved or that LifeShare's right to present its individualized defenses will not be sacrificed if the current purported class is maintained. Proctor, 250 F.R.D. at 283. Accordingly, we find that this second factor also weighs in favor of decertification.

Addressing the third and final factor, we must consider the objectives of the FLSA collective action: "(1) to lower costs to plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). Additionally, the court must consider whether it can manage the class throughout the litigation without prejudice to any party and in such a manner that does not overburden a jury. Id.

Plaintiffs assert that the preservation of the class will further judicial economy by enabling the court to litigate the common issue of LifeShare's meal deduction policy. The court disagrees.

Our review of the argument and evidence before us indicates that the working conditions and managerial prerogatives of each LifeShare blood center are varied and central to determination of the claims at issue. While we agree that a single policy is at the heart of this case, this alone does not justify preservation of the class. There is no question that a meal deduction policy is permissible under the FLSA. 29 C.F.R. §785.19.[2] However, the various applications of LifeShare's meal break policy at issue are necessarily fact-intensive questions, varying by employee and by location. In the court's opinion, the presentation of these claims and the necessarily individualized defenses available to LifeShare predominate over the fact that these claims all arise out of the same policy. Tyson Foods, Inc. v. Bouaphakeo, 136 S.Ct. 1036, 1045 (2016) (internal citations omitted); Johnson at *7. We envision that trying these matters together will present case management issues far beyond any efficiency that may be gained from their class status.

Based upon the foregoing analysis, it is the court's finding that the weight of the Lusardi factors favor decertification of the class in this case. Thus, we find that the plaintiffs are not "similarly situated" in such a way as to fulfill the goals of the FLSA in this collective action. Accordingly, the court will GRANT defendant's motion as to all opt-in plaintiffs who are not current or former employees of the Alexandria LifeShare location, dismissing such claims without prejudice. The motion will be DENIED as to those opt-in plaintiffs who are current or former employees of the Alexandria location.

---

[2] 29 C.F.R. § 785.19 reads, in part: (a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

Additionally, the court suggests that the opt-in plaintiffs' claims, if refiled, be grouped by location. As our ruling demonstrates, a great many of the issues supporting decertification at this time relate to the differences between policy application at various locations.

### III. Defendant's Motion for Partial Summary Judgment

Also pending before this court is a motion for partial summary judgment filed by LifeShare. (Doc. 145). LifeShare's motion seeks judgment in its favor on three bases: (1) that plaintiffs fail to state a claim for relief under the FLSA as to their "overtime gap time" claims; (2) that plaintiffs' claims wherein they allege that LifeShare violated the FLSA by redistributing hours worked to successive weeks in order to minimize overtime pay should be dismissed for lack of evidence or specific factual allegations in support thereof; and (3) that plaintiffs' Louisiana law claims are preempted by the FLSA and, for that reason, should also be dismissed. The issues are fully briefed and the court finds that the motion is ripe for decision.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "We consider all evidence 'in the light most favorable to the party resisting the motion.'" Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 quoting Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). However, the non-moving party does not establish a genuine dispute with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). It is important to note that the

standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

### A. Plaintiffs' Overtime Gap Time Claims

LifeShare's motion seeks a judgment in its favor as to all claims by plaintiffs for what are commonly referred to as "overtime gap time" claims. Gap time claims, also referred to as "straight time" claims, are claims for unpaid wages below the weekly 40-hour threshold. When an employee is paid at or above the minimum wage requirement and does not claim unpaid overtime wages, such gap time claims are not cognizable under the FLSA. Lundy v. Catholic Health Sys. Of Long Island, Inc., 711 F.3d 106, 115 (2nd Cir. 2013). Moreover, claims for straight time in weeks where an employee also works overtime are not contemplated by the FLSA. Id.; Carman v. Meritage Homes Corp., 37 F.Supp.3d 860 (S.D. Tex. 2014).

Plaintiffs allege that LifeShare's meal deduction policy resulted in LifeShare's failure to pay them for both straight time and overtime. (Doc. 154 at p. 5). While plaintiffs concede that claims for straight time are generally not cognizable under the FLSA, plaintiffs assert that their overtime gap time claims – claims for both straight time and overtime in weeks where these employees worked overtime - are within the ambit of relief under the FLSA. (Id.). This court does not agree. Rather, we apply Lundy and its progeny as persuasive on this issue. See, e.g., Banks v. First Student Management LLC, 237 F.Supp.3d 397 (E.D. La. 2017). Accordingly, we find that plaintiffs' straight time claims in weeks where these employees worked overtime are not cognizable as FLSA claims. We agree, however, that such claims may be cognizable as state law claims. The court will address this issue with specificity in this ruling. Any claims by plaintiffs alleging breach of the FLSA based on failure to pay overtime wages will be preserved at this time, though we note that plaintiffs fail to cite any evidence of the existence of these claims in response

11

to the motion. Here, we observe that simply filing hundreds of pages of payroll evidence and citing it generally is unacceptable as a defense to a motion for summary judgment. Plaintiffs are required to cite evidence with specificity. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-57 (1986); Celotex Corp v. Catrett, 477 U.S. 317, 324 (1986). Out of an abundance of caution, we preserve these claims, but will not maintain the claims in the future if evidence is not cited directly and, particularly, in the event of another motion challenging these claims. Ragas, 136 F.3d at 458, *citing* Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

### B. Plaintiffs' Claims for Alteration of Time

LifeShare's motion next seeks summary judgment as to plaintiffs' claims that it violated the FLSA by allowing managers to redistribute hours worked among successive weeks in order to reduce or eliminate overtime hours. (Doc. 145 at pp. 8-10). Plaintiffs' response affirms that it seeks voluntary dismissal of those particular claims, but carefully preserves claims both for alteration of time cards and for undercompensation for travel time. (Doc. 154 at pp. 8-10).

Plaintiffs' allegations regarding the alteration of timecards are duplicative of the prime issue in this case: failure to administer LifeShare's meal deduction policy fairly and consistently under the law. Specifically, plaintiffs' memorandum in opposition asks the court to preserve such claims based on evidence that managers directed employees to record meal breaks on their timecards when they were afforded no such meal break. (Id. at p. 9). Similarly, plaintiffs point to alleged instances where meal deductions were taken although an employee wrote "no lunch" on his/her handwritten timesheets. (Id.). These alleged alterations comprise the central FLSA claim

in this case and, to that end, will be preserved as part of plaintiffs' FLSA meal deduction claim, but will not be recognized as separate claims. Plaintiffs' claims for transfer of time between weeks will be dismissed according to their stated intent.

### C. Preemption of Louisiana Law Claims

Plaintiffs' complaint includes alternative claims based on the Louisiana law of conversion and unjust enrichment. (Doc. 1-2 at ¶¶ 32-41). LifeShare's motion argues for dismissal of these claims based on FLSA preemption. (Doc. 145 at p. 10). LifeShare qualifies its argument by conceding that plaintiffs' gap time claims (claims for hourly wages below the 40-hour per week threshold) are not covered by the FLSA and, for that reason, are not preempted. (Id.). Instead, however, LifeShare advocates dismissal of these claims based on insufficiency of proof. (Id.).

As indicated above, we find applicable jurisprudence dictates that plaintiffs' straight time and gap time overtime claims are not cognizable under the FLSA. Accordingly, we do not find that such claims are preempted by the FLSA, since they do not, at their root, allege a violation of the FLSA. Bell v. Associated Wholesale Grocers, Inc., 2019 WL 1979935 *2 (E.D. La. 2019); Guerrero v. JPMorgan Chase & Co., 2010 WL 457144 *3 (E.D. Tex. 2010) citing Anderson v. Sara Lee Corporation, 508 F.3d 181 (4th Cir. 2007).

Addressing the remaining Louisiana law claims, we must now determine to what cause of action such claims belong. Plaintiffs urge the court to view these claims as sounding in Louisiana's law of conversion. (Doc. 154 at p. 10). Plaintiffs admit, however, that no Louisiana or Fifth Circuit jurisprudence supports an application of the law of conversion to these facts. (Id. at pp. 10-11). LifeShare contends that plaintiffs' claims do not satisfy the elements of a conversion claim, pointing out that plaintiffs are unable to demonstrate ownership of the wages at issue, which Louisiana law requires. (Doc. 164 at pp. 4-5).

13

Having considered the arguments, the court finds that conversion is inapplicable to plaintiffs' gap time and gap time overtime claims. Louisiana's Wage Payment Statute (La. R.S. 23:631, et seq.) expressly provides that employers have a duty to pay all wages due an employee under the terms of employment no later than fifteen (15) days following the date of discharge. La. R.S. 23:631(A)(1)(a). Jurisprudence illustrates that claims under the Wage Payment Statute are not preempted by the FLSA, where the wages sought are not covered by the FLSA or where the Louisiana statute provides the more generous remedy. England v. Administrators of the Tulane Educational Fund, 2016 WL 6520146 *7 (E.D. La. 2016) citing Kidder v. Statewide Transport, Inc., 129 So.3d 875 (La. App. 3 Cir. 2013).

An action for unjust enrichment under Louisiana law requires proof of the following elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) demonstration that the law provides no other remedy to the plaintiffs. La. Civ. C. Art. 2298; Carriere v. Bank of Louisiana, 702 So.2d 648 (La. 1996). Unjust enrichment is a subsidiary claim, meaning that unjust enrichment is not an available cause of action when Louisiana law provides another remedy. Walters v. MedSouth Record Management, LLC, 38 So.3d 241, 242 (La. 2010).

Based on our finding that the proper state law cause of action for unpaid wages rests in Louisiana's Wage Payment Statute, we do not find that plaintiffs' claims are proper under the theory of unjust enrichment, since a remedy is clearly contemplated under existing law. Plaintiffs' petition fails to assert a claim under the Wage Payment Statute, but the mere fact that plaintiffs did not successfully pursue such a claim does not entitle them to unjust enrichment claims. Id. at 244.

We make no finding as to the merits of any future claims under Louisiana's Wage Payment Statute.[3]

## IV. Conclusion

Having considered the law and argument advanced by the parties in this case, LifeShare's motion for decertification (Doc. 146) will be GRANTED in part and DENIED in part. LifeShare's motion for partial summary judgment (Doc. 145) will be GRANTED as to plaintiffs' claims for alteration of time regarding the transfer of time between workweeks, conversion and/or unjust enrichment, dismissing these claims with prejudice.

The court will issue a judgment in conformity with these findings.

July 29TH, 2019
Alexandria, Louisiana

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT JUDGE

---

[3] La. Civ. C. Art. 3494 provides that actions for payment of wages are subject to three-year liberative prescription.

15